IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ARCTURUS INTERNATIONAL LLC,

    Plaintiff,

    v.

DARLENE GELLER-STOFF,

    Defendant.

CIVIL ACTION FILE
NO. 1:21-CV-5155-TWT

## OPINION AND ORDER

This is an action for breach of contract. It is before the Court on the Defendant's Motion to Dismiss [Doc. 3]. For the reasons set forth below, the Defendant's Motion to Dismiss [Doc. 3] is DENIED.

## I.    Background

This case arises out of the Defendant Darlene Geller-Stoff's alleged conversion of more than $1.5 million in cash and securities as well as a valuable home, in breach of her agreements with the Plaintiff Arcturus International LLC. The Plaintiff is a Delaware limited liability company that is in the business of real estate development and film production. (Compl. ¶¶ 4, 8.) Its acting secretary and authorized agent, David Weisman, is a former corporate executive, real estate developer, and investor who has known and worked with the Defendant since 2013. (*Id.* ¶ 8-9.) The Defendant owns a consulting firm that provides businesses with advice and expert witness testimony regarding regulatory compliance, corporate governance, best

business practices, and customer service. (*Id.* ¶ 7.)

## A. The Arcturus Fund Agreement

Together, the Defendant and Weisman, on behalf of the Plaintiff, created a company called Anderlex Holdings LLC ("Anderlex") to invest money and other assets for the Plaintiff's benefit. (*Id.* ¶ 11.) The Defendant became the 90 percent owner of Anderlex, and she was authorized to seek reimbursement from Anderlex for any expenses that she incurred on the Plaintiff's behalf. (*Id.*) The remaining 10 percent was owned by one of Weisman's business colleagues, Pierce Kirby. (*Id.*) Between April and December 2016, the Plaintiff funded Anderlex with $1,491,900 from three sources: a cashier's check, an attorney named Dan Rizzo, and a company called Trade Capital LLC. (*Id.* ¶¶ 13-15.) Despite their differing sources, each of these deposits was allegedly made to Anderlex on the Plaintiff's behalf. (*Id.*) This capital, along with interest, investment income, and appreciation, is referred to in the Complaint as the "Arcturus Fund." (*Id.* ¶ 16.) Also in 2016, the Defendant caused Anderlex, with the Plaintiff's knowledge, to transfer the Arcturus Fund from Anderlex's checking account to a Merrill Lynch brokerage account. (*Id.* ¶ 17.) She held the online banking credentials and passcodes for the Arcturus Fund and shared them with Weisman so that he could make stock trades and other transactions. (*Id.* ¶ 18.)

In the summer of 2017, the Plaintiff and the Defendant agreed to shut down Anderlex and transfer its cash and securities from the Merrill Lynch

brokerage account to a personal brokerage account in the Defendant's name. (*Id.* ¶ 19.) On August 14, 2017, the Defendant caused Anderlex to transfer securities belonging to the Defendant into her personal account numbered NC1669414. (*Id.* ¶¶ 22, 24.) That same day, the Defendant caused Anderlex to transfer other securities belonging to the Plaintiff into her personal account numbered AX6068100. (*Id.* ¶¶ 23-24.) In what became known as the "Arcturus Fund Agreement," the parties decided that the Defendant would hold and use the Arcturus Fund for the Plaintiff's benefit and that the Defendant would account for the funds' use in periodic communications to Weisman. (*Id.* ¶ 25.) The Defendant and Weisman have worked together on several business ventures since establishing the Arcturus Fund, including the potential purchase of a call center, a financial services company, a blockchain digital transaction suite, and an e-commerce platform. (*Id.* ¶ 27.) The Defendant paid expenses related to these business opportunities either directly from the Arcturus Fund or by herself with reimbursement from the Arcturus Fund. (*Id.* ¶ 28.) And she recorded the expenditures in a "Transaction Summary" document which she shared with Weisman from time to time. (*Id.* ¶ 29.)

## B. The Mt. Laurel Agreement

In 2013, the Plaintiff purchased a residence at 11825 Mt. Laurel Drive in Roswell, Georgia (the "Mt. Laurel Property"), where Weisman lived until November 2021. (*Id.* ¶ 33.) To raise cash to settle an unrelated lawsuit, the Plaintiff agreed to sell the Mt. Laurel Property to the Defendant in May 2018.

3

(*Id.* ¶ 34.) Under the terms of their agreement (the "Mt. Laurel Agreement"), the Defendant paid $675,000 for the Mt. Laurel Property with a $500,000 mortgage and $175,000 in cash (reduced to $167,230.35 after credits and adjustments). (*Id.* ¶¶ 35, 37.) Weisman, however, continued to reside at the property, and the Plaintiff reimbursed the Defendant (from the Arcturus Fund) for the down payment and all other expenses related to the property, including mortgage payments, property taxes, and maintenance. (*Id.* ¶ 35, 37-40.) The parties also agreed that upon demand, the Plaintiff could repurchase the Mt. Laurel Property from the Defendant by paying the principal amount then owned on the mortgage. (*Id.*) So, although the Defendant held legal title to the Mt. Laurel Property and was the obligor under the mortgage, she did not have to pay anything toward the property from her own personal funds. (*Id.* ¶ 36.)

## C. Breach of the Arcturus Fund Agreement and the Mt. Laurel Agreement

The personal relationship between the Defendant and Weisman soured sometime between late 2019 and early 2020. (*Id.* ¶ 45.) Then, in November 2020, the Defendant served eviction notices on Weisman and his family for the Mt. Laurel Property, and she initiated a dispossessory action against them in magistrate court on February 11, 2021. (*Id.* ¶¶ 46-47.) In response to the dispossessory action, Weisman demanded that the Defendant reconvey the Mt. Laurel Property to the Plaintiff in exchange for the sum remaining on the mortgage. (*Id.* ¶ 48.) She refused, and the parties instead reached a settlement agreement, as memorialized in the magistrate court's Consent Order, in which

4

the Plaintiff and Weisman agreed to vacate the Mt. Laurel Property by November 10, 2021. (*Id.* ¶ 50 & Ex. L.) The Consent Order also provided that the counterclaims filed by Weisman and the Plaintiff in the dispossessory action were dismissed without prejudice. (*Id.* ¶ 50 & Ex. L.)

On November 4, 2021, the Plaintiff made a written demand to the Defendant to return the balance of the Arcturus Fund and to provide an accurate accounting of her use of its cash and securities. (*Id.* ¶ 52.) The Defendant's counsel responded the next day, rejecting the demand and claiming that the Defendant was the victim of a conspiracy masterminded by the Plaintiff. (*Id.* ¶ 53.) The Plaintiff filed this action in Georgia state court on November 12, 2021, asserting contract and quasi-contract claims, among others, against the Defendant. The Defendant removed the case to federal court and has now moved to dismiss all of the Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6).

## II.   Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, though, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court

must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting the plaintiff "receives the benefit of imagination" at the pleading stage). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of his claims and the grounds upon which they rest. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

### III.   Discussion

The Defendant raises a number of arguments, some broadly applicable and others specifically tailored to individual claims, in support of dismissal. The Court addresses (and ultimately rejects) each of them in turn.

### A. Preclusive Effect of the Dispossessory Action

First, the Defendant argues that Counts Four through Seven of the Complaint are precluded by the Consent Order entered in the dispossessory action. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 9-14.) Generally speaking, these counts allege that the Defendant breached fiduciary duties to the Plaintiff, breached the Mt. Laurel Agreement, and has been unjustly enriched by refusing to reconvey the Mt. Laurel Property to the Plaintiff. (Compl. ¶¶ 71-96.) According to the Defendant, the Plaintiff was required to

6

raise these claims as compulsory counterclaims during the dispossessory action, when the issues of ownership and possession in the Mt. Laurel Property were squarely before the magistrate court. (*Id.* at 10, 13-14.) Having failed to do so, the Defendant contends that the Plaintiff is barred from asserting any rights to the property in this later lawsuit. (*Id.* at 13-14.)

The Defendant's preclusion argument conflates two related but distinct doctrines: collateral estoppel (or issue preclusion) and res judicata (or claim preclusion). (*Id.* at 2 (stating that collateral estoppel is "also known as" res judicata).) "[R]es judicata prevents the re-litigation of all *claims* which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486 (2010) (emphasis added) (citation omitted); *see also* O.C.G.A. § 9-12-40.[1] Collateral estoppel, on the other hand, "precludes the re-adjudication of an *issue* that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies." *Body of Christ*, 287 Ga. at 486 (emphasis added) (citation omitted). The fundamental difference between the two concepts is that res judicata applies to whole claims, whether litigated or not, whereas collateral estoppel applies to particular issues that have been contested and

---

[1] Under Eleventh Circuit precedent, state law governs the question of whether a state court judgment bars a subsequent federal diversity action. *See Precision Air Parts, Inc. v. Avco Corp.*, 736 F.2d 1499, 1503 (11th Cir. 1984).

resolved, even as part of different claims. *See id.*

Although the Defendant initially recites the elements of collateral estoppel, she gives short shrift to the common issues between this case and the dispossessory action. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 9.) In fact, her entire collateral-estoppel analysis consists of just one sentence, which states without citation: "The issue of possession of the Mt. Laurel Property and any rights to the Mt. Laurel Property were squarely at issue in the Dispossessory Case." (*Id.* at 10.) She then reaches a counterintuitive conclusion: "The *claims* raised by [the Plaintiff] are now barred by collateral estoppel in this action because they were raised or *should have been raised* in the [d]ispossessory [a]ction." (*Id.* (emphasis added).) But collateral estoppel is concerned with issues—not claims—and only to the extent those issues were actually decided—not should have been raised—in prior litigation. The Defendant's argument instead tracks the elements of res judicata; indeed, her reply brief focuses solely on res judicata and the related compulsory-counterclaim rule. (*Id.* at 10-13; Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 4-6.) The Court will thus assess the preclusive effect of the dispossessory action and the Consent Order under the res judicata framework.[2]

---

[2] To the extent the Defendant tried to make a collateral-estoppel argument, it fails. Consent judgments "ordinarily occasion no *issue preclusion* . . . unless it is clear . . . that the parties intend their agreement to have such an effect." *Arizona v. California*, 530 U.S. 392, 414 (2000); *see also Heard v. Tilden*, 809 F.3d 974, 978 (7th Cir. 2016); *Cell Therapeutics, Inc. v. Lash Grp.*,

### i.  Res Judicata

Georgia law sets forth three prerequisites to the application of res judicata: (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction. *See Body of Christ*, 287 Ga. at 486. Relevant here, res judicata can also operate to bar a claim that was not, but should have been, asserted in an earlier lawsuit. In particular, if a claim arises out of the same transaction or occurrence as an opposing party's claim, then that claim must be brought as a compulsory counterclaim in the same litigation. *See Metro Brokers, Inc. v. Sams & Cole, LLC*, 316 Ga. App. 398, 400 (2012). "A party may not raise issues arising out of the same transaction which should have been pled as a

---

*Inc.*, 586 F.3d 1204, 1211-12 (9th Cir. 2009).

> It is the general rule that issue preclusion attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment. In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [describing issue preclusion's domain] does not apply with respect to any issue in a subsequent action.

*Arizona*, 530 U.S. at 414 (quotation marks, citations, and alterations omitted). In any event, the Consent Order determines one narrow issue: that is, who is entitled to possession of the Mt. Laurel Property as of a certain date. It does not purport to grant ownership to either the Defendant or the Plaintiff, which is the subject matter of the claims raised in this case. So, the Court concludes that collateral estoppel does not attach to the Consent Order.

compulsory counterclaim in another separate suit. If the first suit is completed, then res judicata serves to bar proceeding with the second action." *Id.* at 401 (citation omitted). In this context, the terms "transaction" and "occurrence" have been broadly interpreted to encompass any "logical relationship between the claim advanced by the plaintiff and the claim asserted by the defendant." *Walker v. Bishop*, 169 Ga. App. 236, 238 (1983).

The Defendant argues that Counts Four through Seven share a common transaction or occurrence with the claims in the dispossessory action: namely, the eviction of the Plaintiff from the Mt. Laurel Property. (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 5.) Because the Plaintiff entered into the Consent Order granting "sole and exclusive" possession to the Defendant, she maintains that the Plaintiff's related claims are barred in this case. (*Id.*) This argument runs into trouble on the third element of res judicata: a previous adjudication on the merits. The Consent Order differs from a standard judgment in that "it results from an affirmative act of the parties rather than the considered judgment of the court following litigation of the issues." *Brown & Williamson Tobacco Corp. v. Gault*, 280 Ga. 420, 423 (2006) (citation omitted). Like any other final judgment, a consent decree can be accorded preclusive effect. *See id.* at 424. But because a consent decree is also a contract, its preclusive effect must be interpreted, like any other contract, according to the intent of the parties. *See id.*; 18A Wright & Miller, Federal Practice and Procedure § 4443 (3d ed. Apr. 2022 update) ("The basically contractual nature of consent

judgments has led to general agreement that preclusive effects should be measured by the intent of the parties. There is no preclusion at all if the parties do not intend to preclude later litigation[.]").

Here, the Consent Order states that the Defendant will be granted possession of the Mt. Laurel Property on or before November 10, 2021, and that if the Plaintiff and Weisman have not vacated by then, a writ of possession shall issue. (Compl., Ex. L at 1.) The Consent Order does not explicitly settle any particular claims brought in the dispossessory action, nor does it purport to settle any claims which could have been, but were not, brought in the dispossessory action. On the topic of preclusion, the document states only that "the counterclaims of . . . Weisman and [the Plaintiff] are dismissed *without prejudice.*" (*Id.* (emphasis added).) It is axiomatic that a dismissal without prejudice is not an adjudication on the merits. *See Dillard-Winecoff, LLC v. IBF Participating Inc. Fund*, 250 Ga. App. 602, 606 (2001). By inserting this language into the Consent Order, the parties must have intended that the Plaintiff could assert its counterclaims again in a future proceeding. Accordingly, the Court will be mindful not to grant the Defendant "a windfall of immunity from litigation" that "would frustrate the parties' expressed intent[.]" *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1291 (11th Cir. 2004).

Now, whether the Plaintiff in fact raised Counts Four through Seven in the dispossessory action is unknown. There is no record from the dispossessory

action before the Court, other than the three-sentence Consent Order and the Defendant's dispossessory petition. (Compl., Exs. K & L.) Neither of these documents identifies the counterclaims filed by the Plaintiff. Further, the Defendant has made contradictory statements about what counterclaims were included in the prior case. She initially represents that "[the Plaintiff] and Weisman filed counterclaims asserting some of the claims raised in this [a]ction." (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 10.) Then she reverses course, arguing that the Plaintiff "did not properly preserve" its current claims before the magistrate court. (*Id.* at 12; *see also id.* at 13 ("Counts 5, 6, and 7 should have been asserted [as] compulsory counterclaims and litigated in the magistrate court dispossessory action.").) On such a scant record, the Court cannot say whether the Plaintiff did or did not raise Counts Four through Seven in the dispossessory action. And by extension, the Court cannot say whether the Consent Order should be interpreted to preclude all, some, or none of the counts.[3]

### ii. Two-Dismissal Rule

On reply, the Defendant makes one last preclusion argument: that the "two-dismissal rule" bars some of the Plaintiff's claims because they were already dismissed in both the dispossessory action and a later-filed federal

---

[3] For the same reason, the Court need not decide at this time whether the Consent Order would preclude compulsory counterclaims that were not asserted before the magistrate court.

lawsuit. (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 2-3.) Rule 41(a)(1) allows a plaintiff to dismiss an action without court order before the opposing party serves either an answer or a summary judgment motion. Fed. R. Civ. P. 41(a)(1)(A)(i). Ordinarily, the dismissal is without prejudice; however, "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a [second] notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). Importantly, the Eleventh Circuit has clarified that the two-dismissal rule is not triggered when the first dismissal occurs by motion and court order, as was the case with the Consent Order in the dispossessory action. *See ASX Inv. Corp. v.* Newton, 183 F.3d 1265, 1267-69 (11th Cir. 1999). So, the Defendant's reliance on the Consent Order to invoke the two-dismissal rule is misplaced, and the later federal-court dismissal does not count as a merits adjudication.

## B. Count One: Breach of the Arcturus Fund Agreement

Count One of the Complaint asserts that the Defendant has breached the Arcturus Fund Agreement by failing (1) to hold the funds for the Plaintiff's benefit, (2) to keep account of the funds, and (3) to deliver the funds to the Plaintiff upon demand. (Compl. ¶¶ 55-58.) The Defendant argues that this claim falls short of the *Twombly-Iqbal* pleading standard in two respects. First, the Defendant argues that the Complaint makes only conclusory allegations as to how she breached the Arcturus Fund Agreement. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 23-24.) Not so. In paragraphs 52 and 53, the

13

Complaint explains that the Plaintiff made a written demand to the Defendant to return the balance of the Arcturus Fund and to provide an accurate accounting of her use of its assets but that the Defendant refused both requests through counsel. (Compl. ¶¶ 52-53.) Second, the Defendant argues that the Complaint shows no damages stemming from the breach. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 24.) This argument is also meritless. The Plaintiff allegedly deposited $1,491,990 into the Arcturus Fund in 2016. (Compl. ¶¶ 14-16.) How much remains in the Arcturus Fund, and how much the Plaintiff should be awarded in damages, are amounts that can be determined at trial.

## C.  Count Two: Money Had and Received

Count Two of the Complaint raises a claim for money had and received, alleging that the Defendant should return the assets in the Arcturus Fund to the Plaintiff. Under Georgia law, a claim for money had and received must include the following elements: (1) a person has received money of the other that in equity and good conscience he should not be permitted to keep; (2) demand for repayment has been made; and (3) the demand was refused. *See Wilson v. Wernowksy*, 355 Ga. App. 834, 843 (2020) (quotation marks and citation omitted). The Defendant makes two arguments to dismiss this claim: first, that the four-year statute of limitations expired months before the Plaintiff filed this action, and second, that the claim is barred by allegations that a contractual agreement governed the management of the Arcturus Fund.

(Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 14-16.) The Defendant is mistaken on both counts.

### i. Statute of Limitations

While both parties agree that claims for money had and received are subject to a four-year statute of limitations, they disagree about when the clock started in this case. The Defendant, citing *Rigby v. Flue-Cured Tobacco Cooperative*, 327 Ga. App. 29 (2014), accurately states that the limitations period begins "on the date the claim[s] could first be successfully maintained." (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 15 (quoting *Rigby*, 327 Ga. App. at 39).) That date, the Defendant argues, was August 2017, when the Arcturus Fund was transferred from Anderlex's to the Defendant's account. (*Id.* at 15.) In response, the Plaintiff argues that its claim did not accrue until it demanded—and the Defendant refused—repayment of the assets in November 2021. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 18.) Since demand and refusal are essential elements of a money-had-and-received claim, the Plaintiff contends that both acts must occur to set off the limitations period. (*Id.* (citing *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2001)).)

Neither the Defendant nor the Plaintiff has it quite right. The Georgia Court of Appeals has explained that a cause of action for money had and received accrues "with the discovery of the fraud." *Macomber v. First Union Nat'l Bank of Ga.*, 212 Ga. App. 57, 58 (1994); *see also Watkins v. Farmers & Merchants Bank*, 2010 WL 1257719, at *4 (M.D. Ga. Mar. 26, 2010). Judged

15

on this standard, the Defendant's proposed accrual date of August 2017 is premature: the transfer from Anderlex to the Defendant was done with the Plaintiff's consent and would not have put it on notice of any fraud. (*Id.* ¶¶ 19-25.) Meanwhile, the Plaintiff's choice of November 2021, though perhaps correct, is based on flawed reasoning since the demand for repayment does not necessarily coincide with the discovery of the fraud. *See Rigby*, 327 Ga. App. at 39-40. Instead, the Court finds that the Plaintiff's claim arose sometime between late 2020 and November 2021. That is when the Defendant allegedly started to violate the parties' agreements and finally refused to return the Arcturus Fund's assets to the Plaintiff. (Compl. ¶¶ 45-53.) Therefore, the Court determines that the Plaintiff, having filed its money-had-and-received claim in November 2021, easily avoided the statute of limitations.

### ii.  Existence of the Arcturus Fund Agreement

Next, the Defendant argues that the alleged existence of the Arcturus Fund Agreement and the Mt. Laurel Agreement bars any recovery for money had and received. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 15-16.) As a general matter, the Defendant is correct that such a claim "exists only where there is no actual legal contract governing the issue." *McGonigal v. McGonigal*, 294 Ga. App. 427, 428 (2008) (citation omitted). But that does not mean that just any contractual relationship between a plaintiff and a defendant will defeat an action for money had and received. Rather, to determine whether a preexisting contract precludes the claim, the relevant question is whether the

16

plaintiff is attempting to avoid or alter the terms of that contract. *See id.* at 429-30. To illustrate, the court in *McGonigal* upheld an action for money had and received where no provision in the parties' divorce settlement addressed the return of an overpayment. *See id.* at 430. By contrast, in *Wynn v. Arias*, 242 Ga. App. 712, 715 (2000), the plaintiff could not recover earnest money on an identical theory because the parties' construction contract "specified the circumstances under which [the defendant] was required to return the earnest money[.]"

Here, the Complaint alleges (and incorporates into Count Two) that the Arcturus Fund Agreement requires the Defendant to deliver to the Plaintiff the balance of the Arcturus Fund upon demand. (Compl. ¶ 56.) Accepted as true, this contractual provision controls the subject matter of the Plaintiff's money-had-and-received claim. (*Id.* ¶ 60.) The Plaintiff, however, argues that this cause of action should be treated as an alternative to its contract claims. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 19.) Indeed, the Federal Rules of Civil Procedure and Georgia's Civil Practice Act sanction alternative and inconsistent claims at the initial pleading stage. *See* Fed. R. Civ. P. 8(d)(2)-(3); O.C.G.A. § 9-11-8(e)(2). And courts generally decline to dismiss equitable theories of recovery—i.e., money had and received and unjust enrichment—if one or more of the parties disputes the existence of an underlying contract. *See, e.g.*, *Ed Federkeil Racing, Inc. v. Fire Serv. Plus, Inc.*, 2021 WL 2555582, at *7 (N.D. Ga. Mar. 17, 2021). Applied here, these authorities allow the Plaintiff to

17

maintain its money-had-and-received claim—at least until the existence and the terms of the Arcturus Fund Agreement are established.

### D. Count Three: Conversion

In Count Three of the Complaint, the Plaintiff raises a claim for conversion based on the Defendant's refusal to return the cash and securities in the Arcturus Fund. (Compl.¶¶ 66-70.) Again, the Defendant argues that this claim is time barred under the four-year statute of limitations. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 16-17.) And again, the Defendant is wrong. The limitations period began in November 2021—less than two weeks before the Complaint was filed—when the Defendant refused the Plaintiff's demand to return the balance of the Arcturus Fund. (Compl. ¶¶ 52-53.) *See Wood v. Garner*, 156 Ga. App. 351, 352 (1980) (holding that the limitations period for conversion starts upon demand and refusal where the plaintiff voluntarily surrendered possession for an indefinite time). The Defendant also argues that the Plaintiff's conversion claim impermissibly seeks to recover a "general sum of money, not some specific money." (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss at 17.) To the contrary, the Complaint alleges in detail how the money in the Arcturus Fund comprises a specific, separate, identifiable fund, as required to support a conversion action. (Compl. ¶¶ 11-25, 67.) *See Taylor*, 250 Ga. App. at 359; *City of Atlanta v. Hotels.com, L.P.*, 332 Ga. App. 888, 891 (2015).

18

### E.  Count Four: Breach of Fiduciary Duty

Count Four of the Complaint alleges that the Defendant, in converting the Arcturus Fund and the Mt. Laurel Property to her own use, breached fiduciary duties owed to the Plaintiff. (Compl. ¶¶ 71-79.) "A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Ray v. Hadaway*, 344 Ga. App. 642, 645 (2018) (citation omitted). The Defendant argues that the Plaintiff's allegations fall short on the first element—the existence of a fiduciary duty—because the parties shared a mere arm's-length business relationship, not a confidential one. (Def.'s Br. in Supp. of Def.'s Mot to Dismiss, at 18-19.) In response, the Plaintiff dismisses this argument as "ridiculous" given the substantial trust and confidence it bestowed in the Defendant. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss, at 22.)

Under Georgia law, a fiduciary or confidential relationship arises "either when a party exercises a 'controlling influence over the will, conduct, and interest of another' or when, 'from a similar relationship of mutual confidence, the law requires the utmost good faith.'" *Bush v. Liberty Mut. Ins. Co.*, 361 Ga. App. 475, 479 (2021) (quoting O.C.G.A. § 23-2-58). In most business dealings, "opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." *Rubenstein v. Palatchi*, 359 Ga. App. 139, 143 (2021) (citation omitted). Rather, to establish a confidential relationship between businessmen, they must be joined together as partners,

19

promoters, joint venturers, or otherwise to achieve a common business purpose. *See Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1168 (11th Cir. 1997); *Kienel v. Lanier*, 190 Ga. App. 201, 203-04 (1989). When individuals transact with each other to further their separate business objectives, there is no duty to represent or advance the other's interests. *See Infrasource, Inc. v. Hahn Yalena Corp.*, 272 Ga. App. 703, 706 (2005).

The following allegations are relevant to the Plaintiff's claim of a fiduciary relationship with the Defendant. In 2016, the Plaintiff (through Weisman) and the Defendant created Anderlex to make investments for the Plaintiff's benefit with money contributed on the Plaintiff's behalf. (Compl. ¶¶ 11-16.) Although the Defendant became the 90 percent owner of Anderlex, her only pecuniary interest (as pled) was to be reimbursed for expenses she incurred on the Plaintiff's business. (*Id.* ¶ 11.) The Defendant, with the Plaintiff's knowledge, caused Anderlex to transfer the Arcturus Fund from Anderlex's checking account, to Anderlex's brokerage account, and then (when Anderlex was shut down) to her personal brokerage account. (*Id.* ¶¶ 17-24.) While the Arcturus Fund remained in her personal account, the Defendant agreed to hold and use the funds for the Plaintiff's sole benefit. (*Id.* ¶ 25.) And she kept a Transaction Summary document to account for her use of the funds. (*Id.* ¶¶ 25, 29-32.) Allegedly, the Defendant also sometimes shared in the profits from trading stocks with the Arcturus Fund and worked with Weisman to pursue other investments and business opportunities. (*Id.* ¶¶ 26-28.)

These allegations paint a complex and, at times, convoluted picture of the Plaintiff and the Defendant's working relationship. At no point does the Complaint allege that they ever entered into a partnership or other formal business arrangement. In fact, although the Plaintiff funded all of Anderlex's capital (from various sources), it took no ownership stake in the company alongside the Defendant. Still, a fiduciary duty may have arisen when the Defendant agreed to hold the Arcturus Fund in her personal account pursuant to the Plaintiff's instructions. *See Ray*, 344 Ga. App. at 646 (denying summary judgment on a fiduciary-duty claim where the decedent had given the defendant partial ownership of her savings bonds for a specified, limited purpose). Also, the parties appear to have shared common business objectives in that they split the profits on some stock trades and possibly entered into multiple business ventures together.[4] Therefore, the Courts concludes that the facts alleged, though not conclusive of a fiduciary relationship, are enough to survive dismissal.

---

[4] It is not entirely clear whether the parties in fact consummated any of the ventures referred to in the Complaint: that is, "the *potential* purchase of a call center, a financial services company, a blockchain digital transaction suite, an e-commerce platform, and several other *potential* ventures." (Compl. ¶ 27 (emphasis added).) This is relevant because a "*failed attempt*" to negotiate a partnership, joint venture, acquisition, or similar business arrangement does not itself create a confidential relationship. *See Infrasource*, 272 Ga. App. at 705-06. For now, the Court will infer from the Complaint that at least some of the alleged transactions came to fruition. *See Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990) (noting that a court should draw all reasonable inferences from the facts alleged in the plaintiff's favor).

**F.  Count Five: Specific Performance for Breach of the Mt. Laurel Agreement**

In Count Five of the Complaint, the Plaintiff seeks specific performance of the Mt. Laurel Agreement: that is, a judgment ordering the Defendant to reconvey the Mt. Laurel Property to the Plaintiff in return for the mortgage principal. (Compl. ¶¶ 80-84.) Because the Mt. Laurel Agreement is alleged to be an oral contract, the Defendant argues that it cannot be enforced by specific performance. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 19-20.) The Defendant is correct that a contract for the sale of land must be in writing to satisfy the statute of frauds. O.C.G.A. § 13-5-30(4). But an equitable exception exists—and specific performance "shall be decreed"—where "the contract has been so far executed by the party seeking relief and at the instance or by the inducements of the other party that if the contract were abandoned he could not be restored to his former position." O.C.G.A. § 23-2-131(a). Under this section, partial execution of the contract can be shown by "partial payment accompanied with possession . . . if clearly proved . . . to have been done with reference to the parol contract[.]" O.C.G.A. § 23-2-131(b); *see also Engram v. Engram*, 265 Ga. 804, 805 (1995).

The Plaintiff relies on this exception to maintain its claim for specific performance. The Complaint alleges that after selling the Mt. Laurel Property to the Defendant in May 2018, the Plaintiff continued to reside there and reimbursed the Defendant for all property expenses, including the down payment, monthly mortgage payments, and property taxes. (Compl. ¶¶34-35,

37-39.) This arrangement continued for two and a half years, with the Plaintiff paying the Defendant more than $300,000 over that period. (*Id.* ¶¶ 37-39.) The parties' intent, according to the Complaint, was that the Plaintiff could repurchase the Mt. Laurel Property from the Defendant upon demand by paying the principal then owed on the mortgage. (*Id.* ¶ 35.) These allegations, the Court finds, are "consistent with the presence of a contract and inconsistent with the lack of a contract." *Edwards v. Sewell*, 289 Ga. App. 128, 132 (2008) (citation omitted). Unlike in landlord-tenant arrangements, the Plaintiff's periodic payments cannot be confused as mere rent since they covered all of the homeownership costs incurred by the Defendant. *Contra Grist v. Foster*, 246 Ga. 565, 565 (1980) (the plaintiff could not show reliance on an alleged oral option to purchase a property where he occupied the property under a written five-year lease agreement).

The Defendant, however, argues that specific performance is foreclosed because the Plaintiff has not tendered the full amount of the mortgage. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 20.) True, "Georgia law generally requires that in order to be entitled to a decree of specific performance, a purchaser must make an unconditional tender of the purchase money due." *Kreiger v. Bonds*, 333 Ga. App. 19, 27 (2015) (quotation marks and citation omitted). Whereas "coin need not be actually presented unless demanded," there must be an "actual, present bona fide offer to pay"— something more than a mere "willingness to pay" or an "offer or intention to make a tender." *Id.*

23

(citation omitted). But tender is excused in cases where the seller, by his conduct or declaration, makes clear that he would not accept the tender. *See id.* at 28; *Chastain v. Schomburg*, 258 Ga. 218, 218 (1988). Here, formal tender would have been futile after the Defendant moved to evict the Plaintiff from the Mt. Laurel Property, essentially repudiating the Mt. Laurel Agreement. (Compl. ¶¶ 46-49.) Indeed, the Defendant refused the Plaintiff's demand to reconvey the property during the dispossessory action. (*Id.* ¶ 48.) So, the Court will allow the Plaintiff's claim for specific performance to move forward even if it did not make the appropriate tender.

Finally, the Defendant argues that the Plaintiff, having agreed to vacate the Mt. Laurel Property in the Consent Order, cannot demonstrate possession under O.C.G.A. § 23-2-131(b). (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 20-21.) This argument, as briefed, is supported by no legal authorities. Of course, the Plaintiff did occupy the property at the time it was making payments under the Mt. Laurel Agreement, as required by O.C.G.A. § 23-2-131(b). Although the Plaintiff then voluntarily gave up possession to resolve the dispossessory action, the Court held above that issue preclusion does not attach to such a consent judgment. The Plaintiff also was not out of possession for any meaningful length of time before filing this case. The Complaint is stamped November 12, 2021—a mere two days after the writ of possession was set to issue under the Consent Order. Therefore, the Court concludes that the Plaintiff has sufficiently pled "partial payment accompanied

with possession" to make out an oral contract for property. O.C.G.A.
§ 23-2-131(b).

## G. Count Seven: Unjust Enrichment and Constructive Trust

Count Seven of the Complaint alleges that the Defendant would be
unjustly enriched if she were allowed to keep the Mt. Laurel Property and the
Arcturus Fund. (Compl. ¶¶ 92, 94.) So, the Complaint asks the Court to impose
a constructive trust to hold and transfer these assets back to the Plaintiff. (*Id.*
¶¶ 93, 95.) Echoing her money-had-and-received arguments, the Defendant
contends that the parties' alleged contracts—the Mt. Laurel Agreement and
the Arcturus Fund Agreement—foreclose an action for unjust enrichment.
(Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 21-22.) But the Defendant has
not conceded the existence or the terms of either contract. Under these
circumstances, Georgia law allows the Plaintiff to pursue alternative theories
of unjust enrichment and breach of contract, even though it could recover on
only one of the two grounds. *See WESI, LLC v. Compass Env't, Inc.*, 509 F.
Supp. 2d 1353, 1363 (N.D. Ga. 2007). Next, the Defendant asks the Court to
dismiss the Plaintiff's request for a constructive trust. (Def.'s Br. in Supp. of
Def.'s Mot. to Dismiss, at 22.) As correctly pled, though, the imposition of a
constructive trust is not a separate cause of action but a remedy to prevent
unjust enrichment. (Compl. ¶¶ 93, 95.) *See Roberts v. Smith*, 341 Ga. App. 823,
829 (2017). Its inclusion in Count Seven is appropriate and does not warrant
dismissal.

### H. Counts Eight and Nine: Punitive Damages and Attorney's Fees

In Counts Eight and Nine of the Complaint, the Plaintiff seeks punitive damages under O.C.G.A. § 51-12-5.1(b) and attorney's fees under O.C.G.A. § 13-6-11, respectively. An award of attorney's fees, costs, or punitive damages is derivative of a plaintiff's substantive claims. *See Stephen A. Wheat Trust v. Sparks*, 325 Ga. App. 673, 682 (2014). As such, the Defendant moves to dismiss Counts Eight and Nine in the event that the Court dismisses the substantive counts supporting them. (Def.'s Br. in Supp. of Def.'s Mot. to Dismiss, at 24-25.) Since each of the Plaintiff's substantive claims have survived dismissal, so too do its claims for punitive damages and attorney's fees.

### IV.   Conclusion

For the foregoing reasons, the Defendant's Motion to Dismiss [Doc. 3] is DENIED.

SO ORDERED, this ____2nd____ day of September, 2022.

THOMAS W. THRASH, JR.
United States District Judge

26