IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ARCTURUS INTERNATIONAL LLC,

Plaintiff,

v.

DARLENE GELLER-STOFF,

Defendant.

CIVIL ACTION FILE
NO. 1:21-CV-5155-TWT

**OPINION AND ORDER**

This is an action for breach of contract. It is before the Court on Defendant's Motion for Partial Summary Judgment [Doc. 41]. For the reasons set forth below, the Defendant's Motion for Partial Summary Judgment [Doc. 41] is GRANTED in part and DENIED in part.

**I.   Background[1]**

This case involves an alleged breach of contract and conversion of nearly $1.5 million as well as a residential home. The Plaintiff Arcturus International LLC ("Arcturus") is a Delaware limited liability company in the business of real estate development and film production. (Compl. ¶¶ 4, 8). The Defendant Darlene Geller-Stoff is the owner and sole member of a consulting and

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

professional services firm. (Def.'s Statement of Undisputed Material Facts ¶ 6). The Third-Party Defendant David Allen Weisman is a real estate developer, investor, and former CEO of several companies. (Compl. ¶ 8).

Weisman has not been a member of Arcturus, individually or through a company, since 2014. (Def.'s Statement of Undisputed Material Facts ¶ 93). On May 25, 2018, Bradfield LLC obtained 100 percent interest in Arcturus. (*Id.* ¶ 97). During Bradfield LLC's ownership, Weisman was never a member, officer, or employee of Arcturus. (*Id.* at ¶ 135). In September 2019, Bradfield LLC transferred its interest in Arcturus to Michael Quakenbush, who remains the managing member (*Id.* at ¶ 111, 120; Ahern Aff., Ex. F).

Geller-Stoff and Weisman met in 2013, and the two had a personal relationship that was "romantic" and/or "very deep" that lasted from August 2013 through June 2020. (Def.'s Statement of Undisputed Material Facts ¶¶ 9, 11; Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶ 11). In 2016, they formed Anderlex Holdings LLC ("Anderlex"). (Def.'s Statement of Undisputed Material Fact ¶¶ 15, 19). Throughout 2016, Weisman caused $1,491,990 to be deposited into the Anderlex operating account with Bank of America ("Anderlex Bank Account"). (*Id.* at ¶¶ 19, 20, 27, 33, 34). These funds came from Arcturus and have been referred to in this case as the "Arcturus Fund." (Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶¶ 27, 33, 34; Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 7, 9; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 5-6).

Weisman used money from the Anderlex Bank Account for Arcturus's business as well as his personal expenses. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶¶ 28-29). Similarly, money was transferred from the Anderlex Bank Account into Geller-Stoff's personal checking account. (*Id.* at ¶ 40).[2] In June 2016, Anderlex created a stock trading account with Merrill Edge and used the account for margin trading. (Def.'s Statement of Undisputed Material Facts ¶¶ 48-49, 51, 55). After Anderlex shut down in the summer of 2017, all but $300 in the Anderlex Bank Account was transferred to Geller-Stoff's personal bank account and trading accounts at Bank of America, and the margin debt and stocks in the Anderlex Trading Account were transferred into Geller-Stoff's personal trading account at SunTrust. (*Id.* at ¶¶ 41, 43, 57). Weisman continued to execute stock trades for the Arcturus Fund after the funds were transferred to the SunTrust Trading Account, which realized a loss of $69,230.88 in 2018. (Pl.'s Response to Def.'s Statement of

---

[2] Arcturus argues that the information on which ¶ 40 of Geller-Stoff's Statement of Undisputed Material Facts relies is hearsay that is inadmissible for purposes of the Motion for Summary Judgment. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶ 40). Without the benefit of briefing on this issue, it appears to the Court that this may be a summary of voluminous recordings pursuant to Fed. R. Civ. P. 1006 with the underlying information falling under the business records exception to hearsay. Furthermore, Arcturus does not challenge the accuracy of any of the information in the spreadsheet. (*Id.*). To the contrary, Arcturus states that the information "provides substantial support" for its position and uses the information in its brief. (*Id.*; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 4-5, 15-16). For these reasons, the Court will consider this information for the purposes of this Order. In future pleadings, Arcturus may provide further argument on why the spreadsheet is inadmissible.

Undisputed Material Facts ¶ 59).

In the summer of 2018, Geller-Stoff loaned $600,000 to DP2018 SPV, LLC to fund a tour in Mexico by the band Deep Purple. (Def.'s Statement of Undisputed Material Facts ¶ 45). The money came from the same bank account in which the assets of the Anderlex Bank Account were deposited. (*Id.* at ¶ 43, 46). DP2018 SPV, LLC executed a promissory note committing to repay the loan to Geller-Stoff. (*Id.* at ¶ 47).

On May 25, 2018, Geller-Stoff purchased real property located at 11820 Mt. Laurel Drive, Roswell, Georgia ("Mt. Laurel Property") from Arcturus for $675,000 (*Id.* at ¶ 8). Geller-Stoff obtained a loan to help her pay for the property. (*Id.* at ¶ 68). When Geller-Stoff purchased the Mt. Laurel Property, Weisman was living in the home and continued to do so after the purchase. (*Id.* at ¶ 61-62). Following the unraveling of the relationship between Geller-Stoff and Weisman in mid-2020, Geller-Stoff pursued a dispossessory action to evict Weisman. (Compl. ¶¶ 45-47). Arcturus subsequently made a written demand for the balance of the Arcturus Fund and for an accounting of its cash and securities. (Compl. ¶ 52). Geller-Stoff rejected the demand. (Compl. ¶ 53). Arcturus brought the present suit, and Geller-Stoff now moves for summary judgment.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue

of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.  Discussion

Geller-Stoff raises several arguments in support of her Motion for Summary Judgment. The Court addresses each in turn.

### A.  Whether Arcturus is Properly Before the Court

The Court starts by analyzing whether this case is properly before the Court. Geller-Stoff argues that Weisman initiated and has guided the litigation for Arcturus and did so without proper authority since "there are no documents authorizing Weisman to act on Arcturus's behalf and Weisman is not the Manager of Arcturus." (Def.'s Br. in Supp. of Mot. for Summ. J., at 6-7). However, it is undisputed that Michael Quakenbush is the only member of Arcturus. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶¶ 110, 112; Ahern Aff., Ex. F). Quakenbush has signed a declaration stating that he authorized the filing of this lawsuit on behalf of Arcturus and that

Weisman is authorized to speak on behalf of the company in this litigation. (Quakenbush Decl. ¶¶ 6-7). That is sufficient for Weisman to act as Arcturus's agent. Restatement (Third) of Agency § 3.01 (2006) ("Actual authority…is created by a principal's manifestation to an agent that, as reasonably understood by the agent, expresses the principal's assent that the agent take action on the principal's behalf."). Geller-Stoff has provided no argument rebutting Quakenbush's declaration and has not pointed to any law requiring the authorization to have been in a written document. (*See* Def.'s Br. in Supp. for Def.'s Mot. for Summ. J., at 4-7; Reply Br. in Supp. for Def.'s Mot for Summ. J.). Therefore, Quakenbush's declaration demonstrates that the filing of this lawsuit and Weisman's participation in it have been "approved by a majority of Managers," and may "constitute the act of the Company" under the terms of Arcturus's operating agreement. (Def.'s Br. in Supp. of Def.'s Mot. for Summ J., Ex. C at 4.1(B)). Arcturus is properly before the Court.

### B. Whether the Arcturus Fund was Misappropriated

Geller-Stoff next asserts that Arcturus is not entitled to recover any money from her because Weisman and Arcturus had complete control of the Arcturus Fund and the Fund was used up by April 2018. (Def.'s Br. in Supp. of Mot. for Summ. J., at 7-8, 13). For its part, Arcturus maintains that the Arcturus Fund still had almost $578,000 at the end of April 2018. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 3-4). It further claims that Geller-Stoff used the Fund to make the Deep Purple investment and to pay for the Mt.

6

Laurel Property and that she then kept the remainder. (*Id.* at 5-13).

### i. Arcturus Fund up to April 2018

While the parties agree that the original Arcturus Fund amounted to $1,491,990, they strongly disagree about whether any of that money was left by April 2018. (Def.'s Statement of Undisputed Material Facts ¶¶ 27, 33, 34; Def.'s Br. in Supp. of Mot. for Summ J., at 7; Pl.'s Response to Def.'s Mot. for Summ J., at 3). To support her position that the money was expended by April 2018, Geller-Stoff says that the focus should be on what Arcturus spent. (Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 2-3). In that vein, she contends that Weisman spent over $500,000 of Arcturus Fund money in each of 2016 and 2017 from the Anderlex Bank Account. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 9-10). Geller-Stoff bases these statements on the relevant paragraphs of her own affidavit and her Statement of Undisputed Material Facts. (*Id.*). Paragraphs 54 and 55 of Geller-Stoff's Affidavit cite to Exhibit I for support, and the Statement of Undisputed Material Facts cites to those same paragraphs of Geller-Stoff's affidavit, Exhibit 1 (which is presumably supposed to be the letter "I" since there is no Exhibit 1), Exhibit X, and Exhibit G.

Going in reverse order, Exhibit G shows statements from the SunTrust trading account, not the Anderlex operating account with Bank of America from which the money is claimed to have been taken. (Geller-Stoff Aff. ¶ 36; Def.'s Statement of Undisputed Material Facts ¶¶ 19-20, 38-39). Moreover, the

statements are from 2017-2019 and thus could not possibly show what Weisman spent in 2016. (Geller-Stoff Aff. ¶ 36). With respect to 2017, the Arcturus Fund was not moved to the SunTrust account until September of that year, so those statements cannot show what Weisman spent from the Fund for the entire year. (Def.'s Statement of Undisputed Material Facts ¶ 57). Even if these statements do somehow demonstrate that Weisman and Arcturus spent over $1 million of the Arcturus Fund between 2016 and 2017, Geller-Stoff provides no citation to specific documents within the well over 1,000 pages of Exhibit G's material that supports her claim. As the Local Rules state, "[t]he Court will not consider any fact: (a) not supported by citation to evidence (*including page or paragraph number*)." N.D. Ga. Local R. 56.1(B)(1) (emphasis added).

Next, Exhibit X does not exist in this case, and it is unclear what this refers to. When Arcturus emailed Geller-Stoff about support for this statement, Geller-Stoff responded that she did not believe there was a missing exhibit. (Brown Decl. Ex. 1). In response to a different question, she responded that an Exhibit X in a separate paragraph of her Statement of Undisputed Material Facts was meant to be Exhibit M. (*Id.*). However, that cannot be what Exhibit X is meant to be in these paragraphs because Exhibit M shows transactions starting in September 2017 and does not show what happened in 2016 or earlier in 2017. (Geller-Stoff Aff., Ex. M). Without knowing what "Ex. X" is supposed to refer to, the Court cannot use it to credit Geller-Stoff's claims about

Weisman's spending.

Third, Exhibit I shows the monthly totals for money going into and out of the Anderlex Bank Account, but it does not break down those totals or show who used the money. (Geller-Stoff Aff., Ex. I). Without a breakdown, this exhibit cannot demonstrate that Weisman or Arcturus specifically spent any particular amount of money from the account. In Geller-Stoff's Reply Brief, she offers another exhibit that describes each account expense and lists to whom it went. (Reply Br. in Supp. of Def.'s Mot. for Summ. J., Ex. 2). Nevertheless, the Local Rules make clear that, "[t]he Court will not consider any fact…(d) set out only in the brief and not in the movant's statement of undisputed material facts." N.D. Ga. Local R. 56.1(B)(1). Geller-Stoff insists that this exhibit does not contain any new information but rather rearranges data already submitted with her Motion for Summary Judgment. (Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 4). However, nowhere in the Reply Brief or the exhibit does Geller-Stoff explain where in her Statement of Undisputed Material Facts this information is stated or referenced,[3] and the exhibits that are cited in her Statement of Undisputed Material Facts are inadequate for the reasons described above. Because Geller-Stoff did not provide in her Statement of

---

[3] In her Reply Brief, Geller-Stoff states that this exhibit was created after re-reviewing Bank of America statements. (Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 4). That may be a reference to Exhibit D of her Affidavit, but that exhibit was never cited in her Statement of Undisputed Material Facts.

9

Undisputed Material Facts an explanation of how she arrived at her figures, Arcturus had no opportunity to examine and potentially dispute these calculations. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶¶ 38-39). Accordingly, for the purposes of this Order, the Court will not credit the claims that Weisman spent over $500,000 of Arcturus Fund money in each of 2016 and 2017.

Without crediting those claims, Geller-Stoff cannot demonstrate that Weisman and Arcturus spent all the Arcturus Fund by April 2018. By her own calculations, Arcturus spent a total of $1,887,182.40 from accounts in Geller-Stoff's control. (Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 9). When the $1,056,723.40 she claims was taken out of the Arcturus Fund in 2016 and 2017 is deducted from that total, the remaining evidence can only show that $830,459 of the $1,491,990 Arcturus Fund was spent. Thus, even if the Court credits every other calculation Geller-Stoff makes, it will be insufficient to show that the Fund was entirely used up by April 2018.

On the other hand, Arcturus points to a statement from the SunTrust account to which the Arcturus Fund was moved after Anderlex was closed. (Pl.'s Response to Def.'s Mot. for Summ J., at 3). That statement shows that the total value for the account at the end of April 2018 was $577,788,49. (Geller-Stoff Aff., Supp. to Ex. G, 47-22,[4] at 32). The insufficient evidence that

---

[4] The supplement to Exhibit G to Geller-Stoff's Affidavit is broken up into 40 parts on the docket. The docket number has thus been added to help

the entire $1,491,990 was spent combined with the evidence that the account was still solvent by the end of April 2018 shows there is a genuine dispute of material fact as to whether the Arcturus Fund was entirely exhausted by April 2018.

    ii.    **Deep Purple Note**

Arcturus claims that Geller-Stoff owes it $425,000 from an investment in a tour in Mexico by the band Deep Purple. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 10). Geller-Stoff denies that it owes Arcturus anything for two reasons. (Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 9). First, Geller-Stoff maintains that the Arcturus Fund was insolvent in April 2018 before this loan was made in the summer of 2018. (*Id.*). This argument fails for the reasons explained above. Second, she contends that at most, Arcturus was an investor in the tour and does not stand to recover any money until the loan is repaid. (*Id.*). The question then is whether Arcturus invested in the Deep Purple tour with Geller-Stoff or whether Geller-Stoff used money from the Arcturus Fund so she could individually invest in the tour.

As she points out in her Reply Brief, Geller-Stoff did not make the decision in invest in Deep Purple's tour unilaterally. (*Id.* at 10). Arcturus concedes that Weisman and Geller-Stoff specifically agreed that the $600,000 should be loaned to fund the tour. (Pl.'s Response to Def.'s Statement of

---

identify the document being cited to.

Undisputed Material Facts ¶ 45). This fact tends to show that Weisman was investing in the tour. On the other hand, Geller-Stoff admits that the promissory note bears her name but not Weisman's or Arcturus's. (Def.'s Statement of Undisputed Material Fact ¶ 47). That fact is more consistent with the view that Geller-Stoff individually invested in Deep Purple using money that was provided by Arcturus. Thus, since there is a genuine issue of material fact related to the Deep Purple Note, summary judgment cannot be granted on this issue.

## C. Whether the Mt. Laurel Agreement is Barred by the Statute of Frauds

Geller-Stoff's third argument is that the Mt. Laurel Agreement does not comply with the statute of frauds or the partial payment exception to it. (Def.'s Br. in Supp. of Mot. for Summ. J., at 18-22). Arcturus responds by arguing that Weisman's payment and possession of the property is sufficient to satisfy the statute of frauds. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., 21-22). As the parties acknowledge, the Court discussed this issue in its previous order denying Geller-Stoff's motion to dismiss. (*Id.* at 21; Reply Br. in Supp. of Def.'s Mot. for Summ. J., at 10-11). There, the Court found that "the Plaintiff has sufficiently pled partial payment accompanied with possession to make out an oral contract for property." (Opinion and Order on Def.'s Mot. to Dismiss, at 24-25) (quotation marks and citation omitted). The question now is whether the undisputed evidence produced in discovery tells a different story from the complaint and demonstrates that the partial payment exception does not apply

here.

As a general rule, land sale contracts must be in writing to satisfy the statue of frauds. O.C.G.A. § 13-5-30(a)(4). However, specific performance of a parol land sale contract is required "if the contract has been so far executed by the party seeking relief and at the instance or by the inducements of the other party that if the contract were abandoned he could not be restored to his former position." O.C.G.A. § 23-2-131(a). The Plaintiff can show partial execution of the contract if it can "clearly prov[e]" that there was "partial payment accompanied with possession...done with reference to the parol contract." O.C.G.A. § 23-2-131(b).

The main thrust of Geller-Stoff's argument is that Arcturus cannot clearly prove that Weisman's possession of the Mt. Laurel property was done with reference to any agreement to reconvey the property back to Arcturus. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 20-22). Instead, Geller-Stoff argues that Weisman's possession of the property came as a result of a romantic relationship between them as well as Geller-Stoff's desire to share her life with him. (*Id.* at 20). In support of her argument that a pre-existing relationship destroys the nexus between payment and possession, Geller-Stoff points to *Grist v. Foster,* 246 Ga. 565, 565 (1980). (*Id.* at 19).

In *Grist*, a tenant argued that the landlord had orally agreed to give the tenant an option to purchase the real estate that the tenant was possessing. When the parties entered into a written lease agreement, the agreement made

13

no reference to an option to purchase. *Id.* When the tenant later sought specific performance to enforce the option, the court dismissed the case because "[w]here a party takes possession under an oral contract to rent, and also alleged an oral option to purchase, the possession is under the tenancy and cannot also be shown to be in reliance on the option." *Id.* at 566 (citation omitted). Similarly, Geller-Stoff contends her and Weisman's pre-existing relationship is the "natural explanation" for Weisman's cohabitation in the Mt. Laurel Property and therefore the nexus requirement is not met. (Def.'s Br. in Supp. of Mot. for Summ. J., at 21).

The Court disagrees. *Grist* is distinguishable from this case. In *Grist*, the party seeking specific performance did not contest the fact that he was in possession under the terms of a lease. *Id.* Even if the reasoning of *Grist* could be expanded from leaseholds to cases of romantic co-habitation—a proposition for which Geller-Stoff provides no law in support—the parties here contest the reasons why Weisman took possession of the property. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶ 62). In fact, the parties even contest the nature of their personal relationship at the time. (*Id.* at ¶¶ 11, 13). In addition, Arcturus has provided evidence that the payments to Geller-Stoff for the Mt. Laurel Property went beyond mere rent and included reimbursing all expenses related to the Mt. Laurel Property that Geller-Stoff paid. (*Id.* at ¶ 68). This arrangement is "consistent with the presence of a contract and inconsistent with the lack of a contract." *Edwards v. Sewell*, 289 Ga. App. 128,

14

132 (2008) (citation omitted). For these reasons, the Court cannot conclude that there is no genuine dispute of material fact or that Geller-Stoff is entitled to judgment as a matter of law on this issue.

### D. Whether the Mt. Laurel Agreement is Unenforceable for Failure to Have a Definite Exercise Period

The fourth argument Geller-Stoff raises is that the lack of a specific time frame in which Arcturus allegedly had to exercise its purchase option renders the entire agreement unenforceable. (Def.'s Br. in Supp. of Mot. for Summ. J., at 23). Arcturus takes the position that the Mt. Laurel Agreement had a specific exercise period because "Geller-Stoff agreed to reconvey the property upon Arcturus'[s] demand and tender of the full amount of the mortgage." (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 22).

The Court agrees with Geller-Stoff. In *Jakel v. Fountainhead Development Corp., Inc.*, 243 Ga. App. 844, 846 (2000) the parties' alleged agreement "lacked a time period within which Jakel could exercise the alleged option to purchase." The court went on to conclude that the parties' agreement, among other things, "fails to state a time within which Jakel could exercise his alleged option to purchase the property," and therefore "the agreement between the parties does not contain the essential elements of an option contract for the sale of land and cannot be enforced as such." *Id.* Additionally, several opinions of the Supreme Court of Georgia have held that option contracts require a specified period of time for the option to stay open. *See, e.g.,*

15

*Black v. Maddox*, 104 Ga. 157, 162-63 (1898) ("If the offer is in writing, for a valuable consideration, *and time is given within which it shall stand open for acceptance*, such option, during the time specified, is irrevocable.") (emphasis added and citations omitted); *Larned v. Wentworth*, 114 Ga. 208, 222 (1901) ("[An option] is such an offer as entitles the person to whom it is made to compel the owner to convey the land if the person to whom it is offered does the prescribed things *within the time limit*.") (emphasis added); *Chatham Amusement Co. v. Perry*, 216 Ga. 445, 446 (1960) ("[A]n option…is simply a contract by which the owner of property agrees with another person that he shall have a right to buy the described property at a fixed price *within a certain time specified*.") (emphasis added and citation omitted).

Arcturus does not attempt to characterize the agreement as anything other than an option contract but asserts that the time period requirement is met because the parties agreed to reconvey the property upon Arcturus's demand and tender of payment. (Pl.'s Br. in Opp'n to Mot. for Summ. J., at 22-23). This argument misses the point. The reason why Georgia courts are strict about the timing of option contracts is because of their "singular one-sidedness" against the optionor and in favor of the optionee. *Barkley-Cupit Enterprises, Inc. v. Equitable Life Assur. Soc. of U.S.*, 157 Ga. App. 138, 141 (1981). In other words, Georgia courts are strict in order to protect the person offering the option from being overly restricted by the option. On that basis, in *Bowden v. Mew Development Corp.*, the Supreme Court of Georgia dismissed

16

an action for specific performance and damages because the option was not exercised within the 10-day period provided, even though the optionee did not actually receive notice until the tenth day and delivered acceptance on the eleventh. 247 Ga. 546, 546-47 (1981).

While Arcturus is correct that the option contract in *Bowden* is distinguishable from the one in the present case since *Bowden* involved exceeding a specified time period and this agreement had none, that distinction does not make *Bowden* irrelevant. The same reasoning that has led the Georgia courts to strictly construe option contract time limits supports the argument to strictly require a time limit in the first place. If permitting a reasonable grace period for stated option contract time limits would "chill the sale of leased premises," *Id.* at 547, the option contract here would totally freeze the sale of the Mt. Laurel Property. Despite owning the property in fee simple, (Geller-Stoff Aff., Ex. A), Geller-Stoff would never be able to sell the property to anyone other than Arcturus because Arcturus could always demand reconveyance, tender payment for the remainder of the mortgage, and sue her for breach of contract if she is unable to reconvey the deed. Meanwhile, Arcturus is under no obligation to ever exercise that option. This kind of one-sidedness is why the court in *Jakel* took issue with the failure to state a time period to exercise the alleged option to purchase the property at issue in that case. *Jakel*, 243 Ga. App. at 846. Arcturus does not discuss *Jakel* in its brief or cite to any case that enforced an option contract with no limit on the

17

time in which the optionee could demand to purchase the property. (*See* Pl.'s Br. in Opp'n to Mot. for Summ. J., at 22-23).

As such, based on the undisputed facts before the Court, this option contract is unenforceable. Summary judgment will therefore be granted in Geller-Stoff's favor on Counts 5 and 6 of the Complaint. However, a legal contract is not required for a claim of unjust enrichment. *Engram v. Engram*, 265 Ga. 804, 806 (1995). Instead, unjust enrichment applies "where the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for." *Id.* (quotation marks and citation omitted). Arcturus has put forth evidence that it reimbursed Geller-Stoff for the expenses related to the Mt. Laurel Property even though she gained legal title to the property. (Pl.'s Response to Def.'s Statement of Undisputed Material Facts ¶ 68). That is sufficient to show that Geller-Stoff is not entitled to summary judgment on Arcturus's claim of unjust enrichment. Accordingly, summary judgment will be denied as to Count 7 of the Complaint.

## IV.  Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 41] is GRANTED in part and DENIED in part.

SO ORDERED, this ___2nd___ day of February, 2024.

*[signature: Thomas W. Thrash]*
THOMAS W. THRASH, JR.
United States District Judge

19